IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBORAH PIPKIN-SULLIVAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case Number CIV-11-431-C |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Deborah Pipkin-Sullivan ("Plaintiff") brought the present suit under 42 U.S.C. § 405(g) seeking review of Defendant Commissioner's ("Defendant" or "Commissioner") final decision denying Plaintiff's application for supplemental security income and insurance benefits based on disability.

### BACKGROUND

On April 21, 2008, Plaintiff applied for supplemental security income and insurance benefits based on disability. In that application she alleged a disability onset date of June 23, 2003, due to depression as well as issues with her shoulder, arms, feet, right knee, and bladder. On September 21, 2007, after conducting a hearing on April 11, an Administrative Law Judge ("ALJ") denied Plaintiff's application for benefits. Plaintiff appealed that denial and the matter was ultimately remanded by the Court to the ALJ for further administrative proceedings. (Order, No. 5:09-cv-00616-C, Dkt. No. 22.) The Court remanded in light of the ALJ's failure to make specific findings regarding the mental demands of Plaintiff's past relevant work. (Id. at 4.) Accordingly, the ALJ conducted a second hearing on January 5,

2011, and ultimately concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light exertion work. (R. at 941.) The ALJ found that Plaintiff could not reach overhead bilaterally or relate to the general public, but that Plaintiff could carry out simple and some more complex instructions under routine supervision and could relate to coworkers and supervisors.

## STANDARD OF REVIEW

Social Security regulations require a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988). At step one, the claimant must establish that she is not engaged in "substantial gainful activity." §§ 404.1520, 404.1572. At step two, the claimant must establish that she has a medically severe impairment or combination of impairments. §§ 404.1520, 404.1523. Step three considers whether the claimant has a medically severe impairment, alone or in combination with other impairments, that is equivalent to a listed impairment that precludes substantial gainful employment. §§ 404.1520, 404.1526 & pt. 404, subpt. P, App. 1. If the claimant has a listed impairment then the claimant is disabled. § 404.1520(d). If the impairment is unlisted, the ALJ determines the claimant's RFC and whether her impairment prevents her from performing work she has previously performed—this determination is step four. § 404.1520(e), (f). At the fifth and final step, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can adjust to other work. § 404.1520. Once the ALJ determines that the claimant is or is not disabled under any of the steps, analysis under the remaining steps is unnecessary. Williams, 844 F.2d at 750.

The Court's review of the Social Security Administration's decision is limited to whether that decision is based on substantial evidence and formed utilizing the correct legal standard. Grogan v. Barnhard, 399 F.3d 1257, 1261 (10th Cir. 2005). If the agency has failed "'to provide this court with a sufficient basis to determine that appropriate legal principles have been followed,'" then reversal is warranted. Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting Smith v. Heckler, 707 F.2d 1284, 1285 (11th Cir. 1983)). "To find that the Secretary's decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988).

## DISCUSSION

In this case, the ALJ found that Plaintiff was not engaged in "substantial gainful employment" and that she suffered from a combination of "medically severe impairments," which included

> carpal tunnel syndrome, . . . frozen shoulder syndrome, status post surgery of the right shoulder (2007) and of the left shoulder (2008), a disorder of the back with back pain, osteoarthritis, a disorder of the left knee, hypertension, migraine headaches, sleep apnea, obesity, post-traumatic stress disorder, depression, and history of polysubstance abuse.

(R. at 937.) Accordingly, the ALJ found both steps one and two were met. At step three, the ALJ concluded that "[t]he medical evidence of record fails to reveal any impairment or a combination of impairments, mental or physical, which meets or equals the criteria of any Listing." (Id. at 938.) Proceeding to step four, the ALJ found that Plaintiff was not disabled

because she retained the RFC to perform previous work as a dispatcher and officer helper. (Id. at 945.)

Plaintiff challenges the ALJ's decision at step three of the five-step process. Plaintiff contends that she objectively established that she suffers from osteoarthritis of the knees and that this condition, combined with her morbid obesity, limits her ability to walk. Because she used a walker, Plaintiff asserts that there is evidence supporting a finding that she meets the listing criteria of 1.02. This evidence, Plaintiff contends, required the ALJ to make findings supported by specific evidence regarding why she does not meet the 1.02 listing criteria despite her knee problems and obesity. Plaintiff argues that the ALJ erred by making findings about gait and station rather than findings regarding effective ambulation. Plaintiff asserts this failure is not harmless because this Court could not conclude that no reasonable adjudicator could find that Listing 1.02 was not met or equaled.

Listing 1.02 requires a

> [m]ajor dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
> or
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, 1.02.

While the ALJ did discuss Plaintiff's gait and station in his step-three analysis, he also went on to make the following observation:

> Consultative examination from 2005 indicated that the claimant had positive findings on the straight leg raise test, yet she was able to heel and toe walk normally. The claimant ambulated normally without any pain or distress and without the use of assistive devices. . . . On July 29, 2010, a prescription for a walker and left knee brace was noted . . . , yet one month later on August 23, 2010, the claimant was advised to **increase** exercise until **walking briskly** (15 to 20 minute mile) for one hour at least 3 to 4 times weekly.

(R. at 943.) And "an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). Despite Plaintiff's contentions otherwise, the ALJ did analyze her ability to effectively ambulate and considered and cited the specific evidence Plaintiff argues proves her inability to ambulate—her prescription of a walker roughly five months before her supplemental hearing. See 20 C.F.R. § 404.1522. Accordingly, Plaintiff's contention that the ALJ failed to utilize the proper standard is unpersuasive.

Plaintiff bears the burden of showing that her impairment matches a listed impairment, which requires that all of the specified medical criteria are met. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). And "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id. While Plaintiff satisfied some of the requirements for Listing 1.02, as Defendant points out, Plaintiff offers no evidence that she satisfies the gross anatomical deformity requirement and makes no response to this contention.

Plaintiff also contends the ALJ erred by failing to properly consider the effect of her obesity in conjunction with her other impairments. Regarding obesity, the ALJ made the following statement:

> It has been mentioned in the medical record that the claimant is obese. The medical record indicates height was noted at 61.5 to 61 inches and weight was noted as 220 to 222 pounds which would give the claimant a body mass index of approximately 40.9 to 41.9 (Exhibits 4F and 5F). The body mass index (BMI) is a measure of an individual's obesity. An index of over 29 is considered to be in the obese range. . . . "[T]he combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." (Social Security Ruling 02-01p). The effects of the claimant's obesity have been considered when determining a residual functional capacity for the claimant.

(R. at 939.) Cf. DeWitt v. Astrue, 381 F. App'x 782, 785-86 (10th Cir. 2010) (finding that ALJ's reliance on nonexamining consultant who did not mention obesity was insufficient consideration of obesity effects). Initially, Defendant notes that Plaintiff did not raise obesity as an impairment when she first applied for benefits, but, as in DeWitt, the ALJ determined that her obesity was a severe impairment. DeWitt, 381 F. App'x at 785. However, unlike DeWitt, the ALJ did not mistakenly rely on a medical opinion that failed to consider obesity as a factor. (R. at 944 (observing and relying upon the absence of a "treating or examining physicians[' opinion] that identif[ies] any subjective or objective medical findings to support a conclusion indicating that the claimant is disabled or even has limitations greater than those determined in this decision.").) Additionally, the ALJ specifically stated he considered obesity in relation to Plaintiff's other impairments and determined she was only capable of light exertion work, with certain limitations. (R. at 941; see id. at 20 (considering in the

previous ruling Plaintiff's obesity and taking into account this condition in making his determination that Plaintiff's RFC was reduced).)

Here, the ALJ "'evaluate[d the] case based on the information in the case record'" and considered Plaintiff's weight in rendering his decision. DeWitt, 381 F. App'x at 785 (quoting SSR 02-1p, 2000 WL 628049, at *6 (Sept. 12, 2002)); Warner v. Astrue, 338 F. App'x 748, 751 (10th Cir. 2009) (stating that "the agency 'will not make assumptions about the severity or functional effects of obesity combined with other impairments' because '[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment.'" (quoting SSR 02-1p, 2000 WL 628049, at *6 (Sept. 12, 2002)). Because the ALJ's decision adequately considers Plaintiff's obesity in relation to her other impairments, Plaintiff's argument to the contrary is not persuasive.

Finally, Plaintiff argues that the ALJ failed to consider new evidence, obtained since the previous hearing, regarding her medical conditions. Specifically, Plaintiff claims the ALJ failed to consider her increased weight, increased GAF score, and new prognosis of a "massive" rotator cuff tear. At the hearing, however, in response to the ALJ's question as to whether additional examining information was available, Plaintiff's counsel, Philip Ryan, stated that "[t]here's no treating or any other sources that I'm aware of . . . ." (R. at 1403-04.) When asked by the ALJ, "Well, is that it as far as treating source opinions, examining source opinions, mobility assistive devices, braces and everything else, or is there more that we didn't discuss back in '07?," Plaintiff's counsel stated, "I think we discussed it all, Judge." (Id. at 1408-09.) In a counseled case, "the ALJ may ordinarily require counsel to

identify the issue or issues requiring further development" and rely on counsel's representations. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1167-68 (10th Cir. 1997). Accordingly, to the extent that Plaintiff claims the ALJ did not cite additional evidence, he was relying on the assertions of counsel that everything had been discussed.

Because the ALJ's decision is supported by substantial evidence and analyzed pursuant to the correct legal standards, the Commissioner's decision is AFFIRMED. A Judgment will enter accordingly.

IT IS SO ORDERED this 10th day of August, 2012.

*/s/ Robin J. Cauthron*
ROBIN J. CAUTHRON
United States District Judge